# Jacob Stokeley *vs.* William J. M. Gordon, and Anna Maria Gordon, his wife's Lessee.

A testatrix devised a house and lot to "*Anna Maria German, wife of Jonathan German.*" Anna Maria was not the wife but the *daughter* of Jonathan German, and his wife was named *Catharine*. The daughter and wife both claimed the devise. HELD :

Per *Mason, J.*, That parol testimony was inadmissible to show, whether the testatrix intended to devise the property to the *daughter* or the *wife;* that the question was one of construction from the *face of the will*, and the *wife* was entitled to the devise.

Per *Tuck, J.*, That the devise was void, for *uncertainty;* and that the property descends to the heir at law as if the party had died intestate.

Per *Eccleston, J.*, That upon a proper construction of the will, in connection with such evidence as was legally applicable to the case, the *daughter* is entitled to the property.

APPEAL from the Superior Court of Baltimore city.

*Ejectment* by the appellees against the appellant for a house and lot in the city of Baltimore. Plea, *non cul.*

1*st Exception.* The property in question belonged to Mrs. Ann Craig, who died in August 1843, leaving a will, executed on the 10th of May 1843, by which she devised the house and lot, now in controversy, "*unto Anna Maria German, (wife of Jonathan German,) to her, the said Anna Maria German, her heirs and assigns, in fee-simple.*" The will, also, contains a bequest of railroad stock, and another of specific arti-

cles of silver to "*Anna Maria German, (wife of Jonathan German.*")  It was admitted that Anna Maria German was born on the 27th of November 1829, and was the *daughter*, not wife, of Jonathan German, and that she intermarried with William J. M. Gordon after the death of Mrs. Ann Craig, and before the institution of this suit.  It was also admitted that the wife of Jonathan German was named *Catharine* German, and that Jonathan German died after Mrs. Ann Craig.  (The plaintiffs in this suit are, Gordon and wife, claiming in right of his wife, who was Anna Maria German, the daughter of Jonathan German; and the defendant Stokely, is the tenant of Catharine German the wife of Jonathan German.)

The plaintiffs then offered a competent witness, and proposed to prove by him that Anna Maria German, (now Gordon,) was the great niece of the testatrix, Mrs. Ann Craig; that her first name, Anna, was given to her after the testatrix; that the testatrix took her to live with her when a small child, about six or seven years of age, and that she lived with her from that time up to the death of the testatrix, a period of seven or eight years, and that the testatrix uniformly treated her with great affection; that she gave her her board, caused her to be educated at her own expense, and conducted her religious training and education; and that the testatrix was an aged widow who had never had children.  To the admissibility of which testimony, and of all parol testimony to show or explain an ambiguity in the will of the testatrix, Ann Craig, the defendant objected, upon the ground that the devise of the property in suit is to and in favor of the wife of Jonathan German, and that the will is free from ambiguity.  The court, (FRICK, J.,) overruled this objection and allowed the witness to be sworn on the part of the plaintiffs.  To this ruling the defendant excepted.

*2nd Exception.* The plaintiffs then proceeded to offer evidence to the jury, the admission of which it was agreed should not be held an abandonment by defendant of the question of law and objection raised in the first exception.  The plaintiffs then, in addition to the evidence set forth in the first exception, proved by witnesses, substantially, as follows:

*Miss Linthicum* testified that she knew Jonathan German,

63    V.8

and his wife Mrs. Catharine German, who was familiarly called Kitty; that she knew Mrs. Ann Craig, and Anna Maria German the daughter of Jonathan and Catharine German, who was called Anna after Mrs. Craig, and was a great-niece of Mrs. Craig; that Mrs. Craig had a brother and some sisters, but never had any children, and was a widow twenty years or more previous to her death, on the 28th of August 1843; that Anna Maria was living with Mrs. Craig in August 1836, being then very small, and continued to live with her from that time till her death; Mrs. Craig was very kind to Anna Maria, though witness does not think she was treated as an adopted child. Isabella Stansbury, another great-niece of Mrs. Craig, was also taken to live with her, and did live with her till her death. Mrs. Craig gave them their board, and said she educated them, and that she occasionally gave them presents. Witness heard Mrs. Craig say she intended giving the piano to Anna Maria German, and a silver cake basket or baskets, and the rest of her silver to Mary Ann Craggs; and also heard her say, that if Anna Maria German behaved herself she would not forget her when she died. Anna Maria always went with Mrs. Craig to the Baptist church, (her family were Episcopalians,) and was sent to the Baptist sunday school by Mrs. Craig. Witness thinks Anna Maria slept in the same bed with Mrs. Craig, and accompanied her to the springs in 1843, shortly before Mrs. Craig's death, being then about fourteen years of age.

*Mrs. Trott* was slightly acquainted with Mrs. Ann Craig; saw her at Jonathan German's house, and heard her say, in the midst of the family, and in the presence of Anna Maria German, that if Anna Maria would be a good girl, and mind her, she would never want for any thing at her death: this was a year before Mrs. Craig's death.

*Benjamin German,* a brother of Jonathan German, deceased, proved that Mrs. Craig had been a widow twenty years, and had never had children; that she had a brother who had several children, and a sister, and that Mrs. Catharine German was the daughter of a deceased sister; that Mrs. Craig lived with Jonathan German for some years, and until Anna Maria German was from five to seven years old, when she went to her own house and took Anna Maria with her.

Stokely *vs.* Gordon and Wife's Lessee.

That she manifested as much devotion to Anna Maria as if she was her own child; that she went with her to church, and assumed her religious training and education. Also, that Mrs. German and Mrs. Craig were upon affectionate terms, and that the former visited Mrs. Craig frequently; that Mrs. German, when a child, and going to school, staid part of her time with Mrs. Craig, and part with her uncle; that Jonathan and Catharine German had other children besides Anna Maria, but all of them except one, a son, were small, and were not very often at Mrs. Craig's.

*Miss Blatchley* was, for five or six years, intimate with Mrs. Craig, and visited her often; that Mrs. Craig took Anna Maria as her own daughter, and told witness that she so considered her; that she was very fond and affectionate to her, and had the religious training and education of her; that Mrs. Craig often told witness she intended to leave Anna Maria enough to live on; that she intended to leave her a house in York or East Baltimore street, a watch and chain, a silver basket, and a piano; that she said this frequently; that this was about two or three years before her death.

*John Hanan,* offered on the part of the defendant, testified, that he was sent for to go to the house of Jonathan German to draw the will of Mrs. Craig; that he went to her room, and asked her to give him the bequests; that she did so and he put them down rough, and then read them to her slowly, and asked if it was right? and she said it was; that he then took the papers home, and drew the will from the memoranda he had made; that he took it the next day to Mrs. Craig and read it to her, and asked her if it was what she wanted? and she replied that it was; he then sent for witnesses and caused it to be executed, and handed it to her; that he was always under the impression that Mrs. German's name was Anna Maria, and thought she was named after Mrs. Craig; that he inserted the words, "wife of Jonathan German," after the name, that there might be no mistake about the person intended. He has no recollection that the name, Anna Maria, was mentioned; that he put it down of his own accord, and then read it to her; that Mrs. Craig was in good health at the time, which was three or four months before she died.

On cross-examination this witness stated, that he took down the names of devisees from Mrs. Craig's lips; that he varied from the plan, because he thought Mrs. German was intended; that he took the names, and put down the relations of his own caution.   He thought Mrs. German's name was Anna Maria; that he wrote the words, "Ann Maria German, (wife of Jonathan German,)" in the rough draft; that he put the word "wife," himself, and that Mrs. Craig did not tell him.

The defendant then prayed the court to instruct the jury, that if they should believe that the testatrix, Ann Craig, executed the will given in evidence, and all the other testimony given in the case, then notwithstanding all the parol testimony, and notwithstanding the jury shall believe the christian name of Jonathan German's wife is Catharine and not Anna Maria, and that Anna Maria is the christian name of said Jonathan's daughter, and that she was in being, and so named, at the date of the will of the testatrix, and that she is now Anna Maria Gordon, and the wife of William J. M. Gordon, and was married to said Gordon after the death of the testatrix, the plaintiff is not entitled to recover, the true construction of said will being, notwithstanding the error in the said wife's christian name, to pass to the wife of said Jonathan German, the property in the several devises and bequests therein set forth, as made to "Anna Maria German, wife of Jonathan German." This instruction the court refused to give, and to this ruling the defendant excepted.   The verdict and judgment were in favor of the plaintiffs, and the defendant appealed.

The cause was argued before ECCLESTON, TUCK and MASON, J.

*Charles F. Mayer* for the appellant, argued:

1st. That although it is admitted that Anna Maria is not the christian name of Mrs. German, yet that the effect of the dispositions in the will is to make the "wife of Jonathan German" the devisee and legatee; and that *only one who fulfilled that relation and answered that description can* take under the will the particular property now in dispute; and that therefore no case of latent ambiguity is presented which authorises

any parol testimony, or is required, for determining the testa-trix's intent; and that that is emphatically true, as there can be but *one* person, as the wife, pointed to; just as (in the posi-tion in *Coke Litt.*, 3. *a*,) where a grant is made to Robert, Earl of Pembroke, avails, although the earl's name is not Robert, but *Henry.* In designation of parties who are to take interests, or are in the view of stipulations, the particular rela-tion or capacity mentioned, *for the purpose of identifying them, is imperative* as one of the terms of designation, and is much *more* to be regarded than the *name*, as the relation or capacity is *more surely and obviously to be known and consid-ered* than is a name. Who can doubt, that if the devise had been *" to the wife of Jonathan German, Anna Maria Ger-man,"* or *" named Anna Maria,"* the construction must have been that the *" wife "* alone is meant? How does the present phraseology differ from that thus supposed? *Anna Maria* is used, and *to obviate chances of error and make the meaning certain*, the identification, as *"* the wife of Jonathan German,*"* is superadded. The parenthesis for the words *"* wife of Jona-than German,*"* indicates that pointedly. It is so the law appre-ciates this definition of the party meant to be benefited, and explains the occasion and purpose of it: *De nomine proprio non est currandum quum in substantia non erretur.* 6 *Coke*, 66. *Branch's Principia*, 38. *Fonb. Eq.*, 427, book 1, *ch.* 6, *sec.* 11. 1 *Greenlf. on Ev.*, secs. 299, 287, 289, 301, 290. 10 *Johns.*, 137, *Jackson vs. Stanley.* 3 *Ves.*, 321, *Campbell vs. French.* 4 *Do.*, 680, *Price vs. Page.* 6 *Do.*, 42, *Smith vs. Coney.* 19 *Do.*, 382, *Stockdale vs. Bushby.* *Ho-bart*, 170, 171, *Stukeley vs. Butler.* 5 *Mees. & Wels.*, 363, *Hiscocks vs. Hiscocks.* 2 *Younge & Collyer*, 72, *Bradshaw vs. Bradshaw.* 11 *Simons*, 467, *Blundell vs. Gladstone.* 9 *Eng. Law & Eq. Rep.*, 269, *Adams vs. Jones.* 11 *Do.*, 191, *The General Lying-in Hospital vs. Knight.* 21 *Do.*, 66, *In re. Rickit's Trust.* 23 *Do.*, 207, *Bernasconi vs. At-kinson.* *Ibid.*, 239, *Douglas vs. Fellows.* 5 *Md. Rep.*, 304, *Walston vs. White.* 7 *Do.*, 22, *Douglas vs. Blackford.*

2nd. *Description* is said to be inferior, as means of designa-tion, to *name*, when appended to the name and when *false.*

But that principle does not govern where there is *truth* in the description as being applicable to another person, and where, under that description, this other person may claim. This relative grade of description is marked by the maxim of *"falsa demonstratio non nocet,"* and no other position than this maxim is meant by it. It is applied only where the *named party* "is certain;" that is, is *certainly* the person meant. Such is the language of the doctrine. As, suppose, a devise *"to my brother A, Judge in Calcutta,"* when although the brother is truly named A, yet he is not a *judge* nor resides in *Calcutta*. There the description yields as a *falsity,* and the name prevails. *Broom's Legal Maxims,* 269 to 274. 6 *Term Rep.,* 671, *Thomas vs. Thomas.* 1 *Lord Raymond,* 304, *King vs. Bishop of Chester.* 1 *Greenlf. on Ev., sec.* 301. *Fonb.,* 427. 2 *Kent,* 271.

3rd. Latent ambiguity arises, and parol evidence is admissible, only where *extra* the instrument more than one are shown to exist, answering the description or designation of the party named as for the benefit of the instrument, or where two or more parties are shown fulfilling each in part the description annexed to the name. The cases of 3 *Barn. & Ald.,* 632, *Le Chevelier vs. Huthwaite,* and of 1 *Ed. Ch. Rep.,* 189, and 4 *Paige,* 272, *Smith vs. Smith,* are instances of the last branch of the position just advanced in regard to the latent ambiguity. In the first case the party named fulfilled the description as being *a son,* thought not *a second son,* as he was characterised, and he who was truly the second son was in competition with him, as within the testator's bounty. In the other case, *(Smith vs. Smith,)* the party named fulfilled, as being *a wife,* the annexed description in part, but did not, *in name,* correspond to the testator's words. If Anna Maria had been *a wife at all,* and (as "German" is affixed to "Anna Maria,") a wife of one *German, not* a *Jonathan, then* a case of latent ambiguity would have arisen and such a case as is exhibited in the two authorities just adverted to, relied on by the appellees. These cases, however, disprove one position of our adversaries; that is, that the *name* is to prevail over all descriptions, as preeminently signifying the person in view of the tes-

tator. Were that so, why was not *Mary Smith* declared leg-
atee, without the introduction of parol proof to test the testator's
meaning between her and *Sarah*, in *Smith vs. Smith?* And
in *LeChevelier vs. Huthwaite*, why was not Stokeham Huth-
waite construed the devisee, without making his claim *depen-
dent on parol proof* for *explaining the testator's intent?* 8
*Bing.*, 244, *Miller vs. Travers*. 1 *Greenlf. on Ev., sec.*
299. 5 *Mees. & Wels.*, 363, *Hiscocks vs. Hiscocks*. 23
*Eng. Law & Eq. Rep.*, 239, *Douglas vs. Fellows*.

*John H. Handy* and *Levin Gale* for the appellees, argued:

1st. That it being shown by the parol evidence that Anna
Maria German was the daughter of Jonathan German, and
that Jonathan German's wife was named Catharine, a latent
ambiguity is shown, and that parol testimony is admissible to
aid in the construction of the will, *particularly evidence of the
situation and condition of the testatrix, and the relationship
and intimacy existing between her and the person claiming
the devise, which was the substance of the evidence excepted
to.* The cases of *Smith vs. Smith*, 1 *Edw. Ch. Rep.*, 189,
affirmed on appeal in 4 *Paige*, 272, and *Doe on Demise of
LeChevelier vs. Huthwaite*, 3 *Barn. & Ald.*, 632, are almost
identical in their circumstances with this case, and in both
cases parol evidence was held admissible. The general rule
on the subject is announced in the case of *Miller vs. Travers,*
8 *Bing.*, 244, and was adopted by the Supreme Court in *At-
kinson's Lessee vs. Cummins*, 9 *How.*, 479. Parol evidence
was also held admissible in the following cases, and in many
others too numerous to cite: 8 *Iredell*, 39, *Eringhaus vs.
Cartwright*. 1 *Iredell's Eq. Rep.*, 11, *Simpson vs. King.*
15 *Conn.*, 274, *Brewster vs. McCall's Devisees*. 4 *Johns.
Ch. Rep.*, 607, *Thomas vs. Stevens*. 1 *Paige*, 291, *Con-
nolly vs. Pardon*. 2 *Dana*, 47, *Tudor vs. Terrel*. 1 *Ves.,
Jr.*, 266, *Parsons vs. Parsons*. *Ambler*, 175, *Dowset vs.
Sweet*. 19 *Ves.*, 601, *Careless vs. Careless*. 10 *Leigh*, 199,
*Maund's Adm'r vs. McPhail*. 1 *Wend.*, 541, *Doe vs. Roe*.
1 *B. Monroe*, 111, *Haydon vs. Ewing's Devisees*. 1 *H. & J.*,
192, *Dorsey vs. Hammond*. 3 *Watts*, 385, *Vernor vs. Henry.*

12 *Penn. State Rep.*, 136, *Brownfield vs. Brownfield.* 2 *Mees. & Wels.*, 129, *Gord vs. Needs.* 12 *Adol. & Ellis*, 451, *Allen vs. Allen.* 4 *Ves.*, 680, *Price vs. Page.* 1 *Wm. Black.*, 60, *Jones vs. Newman.* 4 *Md. Rep.*, 506, *Marshall vs. Haney.* 5 *Do.*, 303, *Walston vs. White.* 7 *Do.*, 22, *Douglas vs. Blackford.* 1 *House of Lord's Cases*, 778, *Lord Camoys vs. Blundell*, and the same case in 11 *Simons*, 467, 6 *Term Rep.*, 671, *Thomas vs. Thomas.* 2 *Younge & Collyer*, 72, *Bradshaw vs. Bradshaw.* 23 *Eng. Law & Eq. Rep.*, 207, *Bernasconi vs. Atkinson.* *Ibid.*, 238, *Douglas vs. Fellows.* There is no case in England or in this country which has dared to question a single point decided in *Miller vs. Travers;* but on the contrary, that case has been affirmed by every court in which the question has been raised.

2nd. That if the will is free from ambiguity, and either the name or the designation is to be preferred, that the name is entitled to the preference, and that therefore Catharine German, the wife, is not entitled before Anna Maria, the daughter, who bears the name. On this point, see *Bacon's Maxims of the Law*, rule 25: "*Presentia corporis tollet errorem nominis et veritas nominis tollet errorem demonstrationis.*" Under which rule Lord Bacon says: "*There be three degrees of certainty:* 1st. *Presence.* 2nd. *Name.* 3rd. *Demonstration.*" And again: "*The proper name of every one is in certainty worthiest; next are such appellations as are fixed to his person, or at least of continuance, as "son of such a man," "wife of such a husband,"* &c. See also 1 *House of Lord's Cases*, 778, *Lord Camoys vs. Blundell.*

Mason, J., delivered the following opinion:

In what cases, and to what extent, parol testimony is admissible to explain ambiguities in wills, or to ascertain the intention of the testator *dehors* the will itself, are questions, the determination of which has ever been attended with the greatest difficulty. To this class of questions does the one presented upon this appeal belong.

On the trial below it was admitted that Mrs. Craig, the testatrix, was seized of the real estate in controversy, and that

Stokeley *vs.* Gordon and Wife's Lessee.

by her will, duly executed, she devised the same "to Anna Maria German, wife of Jonathan German," and that Anna Maria was not in fact the wife, but the daughter of Jonathan German, but that his wife was named Catharine.

In this condition of the case the question arose, whether parol testimony was admissible to enable a jury to ascertain whether the testatrix intended to devise the property to the *daughter*, or the *wife*, or whether such parol evidence was to be excluded, and, from the will itself, arrive at the intention of the testatrix? Parol evidence was received, and the question of intention submitted to the jury, who found in favor of the daughter, and hence this appeal.

In all cases it is necessary, in construing wills, that the court should be placed, by parol evidence, in possession of all the surrounding facts and circumstances connected with the testator, and which tend to show his situation in his relations to the persons and things to which his devise may refer. Therefore it would have been proper in this case to have shown, if the fact had not been admitted, that the name and description of the devisee did not concur. Properly speaking this is not that kind of evidence which is intended to explain written instruments, but is proof necessary to enable the court to understand the situation of the testatrix, and thus reach the meaning and application of the words employed in the will. But the evidence which is sought here to be introduced, to show the intention of the testatrix, independent of the words of the will itself, and of such surrounding circumstances as have been alluded to, is a question of a very different nature. The inquiry then arises, in what cases extrinsic evidence of intention on the part of the testator is admissible: or, in other words, in what cases can ambiguities in written instruments be explained by parol proof?

*Patent ambiguities* are those which appear upon the face of the writing itself: as for example, a will with the name of the devisee left in blank. As a general rule such ambiguities cannot be explained, but if settled at all, must be from the face of the paper itself.

On the other hand a *latent ambiguity* is, where a writing is

64   v. 5

perfect and intelligible upon its face, but from some circumstance admitted in proof, a doubt arises as to the applicability of the language employed to a particular person or thing; but it is by no means an universal rule that general parol evidence is admissible to explain even latent ambiguities, or that such questions, in every instance, are questions of fact for the jury. The present case presents an example of a latent ambiguity.

Cases of latent ambiguity may be classed under three heads. The first is, when the description contained in a written instrument, of the person, thing or place intended, is applicable with equal certainty to each of several subjects, as a devise to "my cousin John," when the testator has two cousins John. In cases belonging to this class, and in none other, (it would seem from the later authorities,) is general parol evidence of the intention admissible, such as the declarations of the testator at the time and before executing the will, the nature and character of his intercourse and relations with the different parties, and things intended to be described, and the like. This principle, in the broad language in which we have laid it down, has been recognised in a number of cases, but the rule upon the subject is perhaps no where so well and fully defined, as in the recent case of *Hiscocks vs. Hiscocks*, 5 *Mees. & Wels.*, 363, by Lord Abinger. He says: "Now, there is but one case in which it appears to us that this sort of evidence (the testator's declarations, the instructions given for his will, and other circumstances of the like nature,) of intention can properly be admitted, and that is where the meaning of the testator's words is neither ambiguous nor obscure, and where the devise is on the face of it perfect and intelligible, but from some of the circumstances admitted in proof, an ambiguity arises, as to which of the two or more things, or which of the two or more persons, (each answering the words of the will,) the testator intended to express. Thus if the testator devise his manor of S to A, B, and has two manors of S," &c. "It appears to us, that in all other cases parol evidence of what was the testator's intention ought to be excluded, upon this plain ground, that the will ought to be made in writing; and if his intention cannot be made to appear by the writing, explained by circumstances, there is no will."

In a still later case, (1853,) *Bernasconi vs. Atkinson*, 23 *Eng. Law & Eq. Rep.*, 207, the same principle is thus broadly announced: "Now, I think it is quite plain, upon looking through the authorities, that there is only one case in which any evidence can be introduced to show the intention of a testator, namely, where the description in the will is equally applicable to two different subject matters of devise, or to two different persons."

Again, in *Wigram on Wills*, (2 *Lib. of Law & Eq.*,) *Prop. 7, page* 101, it is said, "that courts of law, in certain special cases, admit extrinsic evidence of intention to make certain the person or thing intended, when the description in the will is insufficient for the purpose. These cases may be thus defined:—when the object of a testator's bounty, or the subject of disposition, (i. e., the person or thing intended,) is described in terms which are applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons or things so described was intended by the testator."

To this class of cases belong those of *Cheney*, 5 *Rep.*, 68; *Couden vs. Clerke, Hobart*, 32; *Jones vs. Newman*, 1 *Wm. Black*, 60; *Doe vs. Westlake*, 4 *Barn. & Ald.*, 57; *Fox vs. Collins*, 2 *Eden*, 107; *Brownfield vs. Brownfield*, 12 *Penn. State Rep.*, 136, and others. In all those cases general parol evidence was properly admitted, including the declarations of the testator, to show his intention, or explain his meaning. And the reason of the rule is obvious, and it is because it would be impossible to form any general, sensible rule of interpretation, by which courts could settle such questions from the face of the will itself, and they would remain undetermined, if parol proof of intention were not permitted to go to the jury. In the case of *Vernor vs. Henry*, 3 *Watts*, 393, Chief Justice Gibson says: "When the designation is by a name common to two or more, and without reference to circumstances of description, the question of identity is one purely of fact."

The second class of cases of ambiguity is, where the name, or description, or both, of the person or thing intended to be referred to, is in some respect so far incomplete or erroneous, as not to refer with precision to any particular person or thing,

and therefore the defect or omission has to be supplied by implication, as, for example, a devise was to "Catharine Earnly," while no person of that name claimed the legacy, but one Gertrude Yardly did. *Beaumont vs. Fell*, 2 *Peere Wms.*, 140. The cases of *Thomas vs. Thomas*, 6 *Term Rep.*, 671; *Vansant vs. Roberts*, 3 *Md. Rep.*, 119, and others, are also examples of cases of this character. It may be added that out of such cases have arisen the greatest difficulties and conflict of authorities, as to whether such questions were to be determined by the court or by the jury, and to what extent, if at all, extrinsic evidence was admissible to ascertain the testator's intention. In many instances the same rule has been adopted as in cases falling under the first head, and the widest latitude has been allowed to the introduction of evidence to the jury, and the two English cases last cited are examples of the great extent to which courts have gone upon this point. We have referred to them, not as authorities, (for they have not been sustained by later cases,) but as illustrations merely of our meaning. The case also of *Camoys vs. Blundell*, 1 *House of Lords' Cases*, 778, is one of this class, and the same case is also reported in 11 *Simons*, 467, and is more fully referred to hereafter. In modern decisions much less latitude is allowed in the admission of testimony of intention than was warranted by the earlier cases, and, if what we have said upon the first head be correct, the practice of submitting such questions as those which belong to cases arising under our second head to the jury at all, and especially upon the declarations of the testator, and other similar evidence, is not warranted by sound general principles, or by cases of later adjudication. All such questions are questions of construction for the court, and must be determined from the face of the will itself, in connection only with such facts and circumstances as, in the language of Lord Coke, "stand well with the will."

In the case of *Blundell vs. Gladstone*, as reported in 11 *Simon*, 467, and which we have before said belongs to this class, the vice-chancellor says: "The sole question is, who was the person described as 'Edward Weld, of Lulworth, in the county of Dorset, Esquire?' That is the sole question,

and for the purpose of determining it I shall only advert to the evidence which has been given, and very properly given, of the state of the Weld family, entirely rejecting from my consideration every thing else *dehors* the will, that can be at all said to bear upon what the testator's intention was. I look only at the facts of the case, namely, at those facts which show the state of the Weld family at the date of the will, and what the testator has said in his will." See also 5 *Pick.*, 512, and particularly the case of *Douglas vs. Fellows*, 23 *Eng. Law & Eq. Rep.*, 240. The case of *Vansant vs. Roberts*, 3 *Md. Rep.*, 119, was a case of this class, and there this court rejected parol evidence and decided the case from the face of the will, and the surrounding circumstances.

Then comes the third class of cases, as where the name used applies perfectly to one person or thing, while a description employed applies as perfectly to another. To this class belongs the case we are now considering. Such also were the cases of *Doe vs. Huthwaite*, 3 *Barn. & Ald.*, 632; *Smith vs. Smith*, 1 *Edwards Chan. Rep.*, 189; *Adams vs. Jones*, 9 *Eng. Law & Eq. Rep.*, 269; *Bradshaw vs. Bradshaw*, 2 *Younge & Col.*, 72; *Vernor vs. Henry*, 3 *Watts*, 385; *Douglas vs. Blackford*, 7 *Md. Rep.*, 8, and others.

The first matter to be determined, in a case like the present, is, whether the question is one of fact for the jury, or whether it is one of construction for the court? Upon principle it seems plain, that it must be one of construction, and should be settled by the court from the face of the will, in connection with the surrounding circumstances attending the transaction, although it is to be admitted, which it is to be regretted, that the authorities are very conflicting upon the subject, and any attempt to reconcile or harmonise them, would be a work of impossibility. In speaking of wills being the subjects of construction for the court, of course it is only meant to embrace such cases where the facts, which would be properly admissible in evidence, are admitted. In every instance when facts are denied, they must be found by the jury upon a hypothetical instruction from the court. Ch. J. Gibson, in *Vernor vs. Henry*, says, "that the ascertainment of intention from the will itself falls within the province of the court."

Here it may be remarked, if the principle laid down under our first head, upon the authority of Lord Abinger and others, be correct, then the present case is not one for the jury, or for the admissibility of parol evidence, because it does not fall within the rule there prescribed for the admission of such testimony. Where, from the face of the will, in connection with the surrounding circumstances, a case is disclosed, upon which the judicial mind can take hold, and upon principles of reason or logic, arrive at a conclusion in regard to the testator's intention, then the case is one of construction for the court, and not one of intention depending upon extrinsic evidence and to be found by a jury. The case before us is one of this character, while cases falling under our first head could never be determined upon any such principle, and must therefore be submitted to a jury upon general evidence of intention. And it may be added, that this question is a matter of construction for the court appears manifest from the circumstance, that as far back as Lord Bacon's time, a rule of interpretation was adopted by which cases of this kind were to be determined, and that that rule, with certain qualifications, has been repeated and recognised down to the present period. If this therefore be a question purely of intention, to be governed by the peculiar facts of each case, as understood by different juries, does it not follow that the result would work a complete abrogation of the rule? In other words, where is the office of this or any other rule, if each case is to turn upon the intention of the testator independent of all rules?

Lord Bacon states the maxim of law to be, *"veritas nominis tollit errorem demonstrationis;"* which is, *the truth of the name takes away, or controls, the error of the description.* As recently as 1849, Chief Justice Gibson, in the case of *Brownfield vs. Brownfield,* already cited, adopts precisely the same rule, in this language: "Where a concurrent designation by name and description disagree, the rule is, that the former shall be taken to be more worthy in certainty." And the same rule is commented upon in the still more recent English case of *Camoys vs. Blundell,* 1 *House of Lords' Cases,* 778. Of the rule Lord Brougham says, "I admit its authority as a general principle."

If, therefore, this rule comes to us well sanctioned, as it certainly does, then we are to conclude, that all questions falling within the purview of the rule, are to be governed by the rule, and that we have no more right to disregard rules of interpretation in arriving at the purpose of the testator, by submitting the question of intention to the jury, than we would have to disregard the long and well established rule adopted in *Shelly's case*, and to make all the questions so long controlled by that rule, depend entirely upon the capricious conclusions of juries, based upon facts outside of the instrument. All wills, it is true, depend upon the intention of the testator, but in every case, except the one already referred to, namely, where the designation is by a name, common, with equal certainty, to two or more persons or things, that intention must be ascertained by the court from the face of the will itself, and the surrounding circumstances which are connected with, or relate to, the parties, or the subject matter of the devise, and upon established rules of interpretation.

The error in the present case consists, in having submitted to the jury the question of intention, and in having received testimony other than that which was simply sufficient to bring the case within the operation of the rule, by showing that the name designated one person, while the description pointed to another. At this point of the case the rules of interpretation ought to have been invoked, and from them the intention ascertained.

As has before been remarked, the authorities do not sustain with unanimity the principles herein announced: on the contrary, many cases, especially those of earlier date, have admitted parol evidence, in its widest range, to go to the jury in cases in all respects like the present. But we repeat that such cases do not rest upon sound principle, and are not sustained by the more recent decisions. The case of *Vernor vs. Henry,* was a case like this, and although parol evidence was admitted to ascertain the intention of the testator, yet in the subsequent case of *Brownfield vs. Brownfield,* Judge Gibson in referring to his previous decision in *Vernor vs. Henry,* places the decision upon the express ground, that it was in pursuance of the

rule of Bacon.   He says, "I can, at present, recall but one case in which a legal conclusion has been drawn from modes of designation.   Where, as in the case of *Vernor vs. Henry*, 3 *Watts*, 393; a concurrent designation by name and by description, disagree, the rule is that the former shall be taken to be the more worthy in certainty."   The late cases of *Hiscocks vs. Hiscocks*, already cited, and *Miller vs. Travers*, 8 *Bing.*, 244, assail many of the earlier cases upon this question, as unsound.   The court, in the first of those cases, say, "it must be owned, however, that there are decided cases which are not to be reconciled with this distinction in a manner altogether satisfactory."   And again, "these cases, (*Thomas vs. Thomas* and *Beaumont vs. Fell*,) seem to us at variance with the decision in *Miller vs. Travers*, which is a decision entitled to great weight."   By authority of the case of *Miller vs. Travers*, as well as that of *Hiscocks vs. Hiscocks*, the earlier cases of *Thomas vs. Thomas*, 6 *Term Rep.*, 671; and that of *Beaumont vs. Fell*, 2 *Peere Wms.*, 140, are expressly overruled, and we think properly.   The case of *Douglas vs. Blackford*, 7 *Md. Rep.*, 8, fully supports the position, that in cases like the present, the question is one of construction for the court, and not a question of intention to be found by a jury.

This then brings us to the consideration of the last point suggested by this record, and that is, as a question of interpretation for the court, who takes under this will, the *daughter*, or the *wife*, of Jonathan German ?

If the principle laid down by Bacon is to prevail as the unbending rule of law, upon the subject, without qualification, then the daughter would undoubtedly take.   But Baron Parke in *Camoys vs. Blundell*, expressly says, that the rule "*is not inflexible*." and Lord Brougham in the same case adds, "I admit its authority as a general principle; but still, so far from its being an inflexible rule, I find the learned judges have held that it is not inflexible;" and a number of other cases to the same effect, might be cited.

The *reason* assigned for this principle, as a general rule of interpretation, is, that the name being more certain than the description, should therefore prevail.   It would seem to follow

as a necessary consequence, that the converse of the proposition would be true, if the description was more certain than the name. It would undoubtedly strike every one as reasonable, that the best and surest way to designate persons would be by the name they bear, yet, at the same time it must also be admitted that title or description, in many cases, would be a paramount and superior designation to the name itself even. What could be a more commanding or certain designation of any woman, than that of *"wife of"* such a man? How many females do we know, well, and even intimately, as the wives of particular individuals, without even knowing their christian names? The title, in such a case, is so unerring and complete as to absorb the name almost entirely:—in other words, it becomes the substitute for the name itself. Indeed, it is a very common practice at present, to convert the name of the husband into that of the wife, by simply affixing to the former the letters, *"Mrs.,"* thus dispensing with the real christian female name almost entirely.

So with the titles, for example, of president, or governor, or the like. In such cases the designation points so unerringly to a particular individual, that the name becomes, comparatively, of small moment.

The precise point involved in the present appeal has been twice adjudicated and reported,—so far as we have been able to discover. The case of *Smith vs. Smith,* 1 *Edwards' N. Y. Chan. Rep.,* 189, it must be admitted is, in all respects, in direct conflict with the positions we have taken in this opinion. In the first place parol evidence was admitted, for the purpose of reaching the intention of the testator. One of the chief authorities relied on for such a proceeding, was the case of *Thomas vs. Thomas,* which we have shown has been overruled by the later and better cases. In the next place the old rule of Lord Bacon was recognised without qualification, and the description of "wife of N. S." was made to yield to *the name,* which pointed to another person. This case was decided in 1831.

On the other hand, the case of *Adams vs. Jones,* 9 *Eng. Law & Eq. Rep.,* 269, and which was decided as late as 1852, is a case directly in point to support the positions

herein taken. In that case the devise was "to Clare Hannah Adams, the wife of Thomas Adams." A daughter of Thomas Adams was named Clare Hannah, but the name of his wife was simply Hannah. The daughter and wife, as in this case, both claimed the legacy. The court held that the question was one of construction by the court, from the face of the will, and decided in favor of the claim of the wife. The court say, "But, in the present case, the testatrix must have known who was the wife of Thomas Adams, and probably made a mistake in the name." The same theory would determine the present case in the same way. See, also, 1 *Coke Lit.*, 3 *a*, *(Ed. of* 1853.)

It is averred with confidence, that if this devise were submitted to the correct thinking and sound judging men of any or all professions, unembarrassed by the extrinsic evidence which has been made to surround and confuse the case, that ninety-nine out of every hundred of them would say the testatrix meant the *wife* and not the *daughter* of German.

In the view taken of this case, it would perhaps be unnecessary to express any opinion in regard to the first exception, which related to the admissibility of testimony. Some of the facts proposed to be proved, may have been (but I express no opinion) of that class which "stand well with the will," and were therefore admissible, and as the objection to the testimony was *general,* the court was probably right in overruling it. But if all the legal evidence applicable to the case and none other, had been received, the *prayer* of the appellant, which adopts the interpretation already suggested, ought to have been granted. But not having been granted, the judgment ought to be reversed.

This opinion has rested, throughout, upon the well settled and almost universally recognised principle of more modern times, that in no case is the bequest to be deemed void for uncertainty, as to the person or thing referred to, by the testator, if, with any degree of reasonable certainty, it can be ascertained upon legal rules of interpretation. I am in favor, therefore, of a reversal of the judgment.

But in the conclusions to which I have come in the forego-

ing opinion, my brother judges do not concur. *Judge Eccleston* thinks, that upon a proper construction of the will, in connection with such evidence as was legally applicable to the case, the *daughter* of German is entitled to the property, and that the judgment ought to be affirmed. On the other hand, *Judge Tuck* is of the opinion, that the devise is void for uncertainty, and that the property embraced in it descends to the legal heir, as if the party had died intestate. Without approving of the result of the trial below, he nevertheless thinks, that the ruling of the court upon the first exception was correct, because the objection of the appellant to the admissibility of the testimony, having been general to the whole evidence, and as some of it was legal and proper, the objection was properly overruled under a well established rule frequently adopted by this court. *Judge Tuck* thinks, also, the prayer of the appellant was properly refused, because it asked the court to say that the property passed to German's wife, while he thinks it descends to the heir or heirs at law.

As between the heirs at law, and Anna Maria German, *the daughter,* I express no opinion.

The anomalous position of the court upon the questions involved in this case, leads inevitably to an affirmance of the judgment.

*Judgment affirmed.*

Tuck, J., delivered the following separate opinion:

Although the law, in some cases, admits evidence of surrounding facts, for the purpose of ascertaining the meaning a testator may have applied to certain words used in his will, it nowhere countenances the idea, that speculation or conjecture may be indulged in. The facts when received must satisfy the mind, at least beyond a reasonable doubt, that the exposition they are designed to support is the correct one. We must resort to the words of the will, (aided in those cases in which parol evidence is received,) free from conjecture. *Ram. on Wills*, 31. Lord Mansfield said, "Guesses may be formed, but that is not enough. Perhaps *quod voluit non dixit.* We cannot make a will for the testator. Conjectures

may be made both ways." *Dougles,* 78. The intention must be gathered from the whole will so as to leave the mind quite satisfied about what the testator meant. *3 Burr.,* 1531. We cannot proceed on loose conjectural interpretations, or by considering what a man may be imagined to do in the testator's circumstances. 1 *Eden,* 43. *3 Term Rep.,* 85.

It is much to be regretted, I think, that parol evidence was ever admitted except in cases of undoubted latent ambiguity, such as where there are two persons of the same name, or two estates or other pieces of property known by the same designation, *each answering the words in the will.* Here, however, there are not two persons answering fully the name and description in the will. On its face it shows a plain intent, provided the person named is the wife of Jonathan German, but she is not; and hence the property cannot pass to either, *according to the words of the will as they are written.* If the claim of either be allowed so much of the will as would give the estate to the other must be overlooked or explained. The name applies to one and the description to another, and we are called upon to say which was intended as devisee of the property.

After carefully considering the case, with every disposition to avoid an intestacy, which the books tell us is our duty, I cannot, with any degree of confidence, satisfactory to my own mind, declare, that the exposition of either side is well founded. Part of the evidence taken alone would show one view *to be correct, but that is fully met, if not overcome,* by other portions of the proof, and when the whole evidence is considered in connection with the will the uncertainty is very much increased. The doctrines of the law applicable to these questions are fully discussed by Mr. Wigram under his sixth and seventh propositions, according to which, and the cases there cited, I am of opinion that a prayer affirming the right of either party, claiming as devisee, could not be granted. It is to be remembered that the law pays respect to the rights of the heir at law, and that he is not to be disinherited by slight implication or vague conjecture as to the intent of the testator, gathered from evidence of facts, of which, in the present case,

it may be safely averred, there is much on both sides. The only safe test, if indeed any can be so called, where the door to parol evidence is once opened, is, as stated by *Wigram*, 99: "Do the words of the will, when all the circumstances of the case are known, express the intention which is ascribed to the testator? The court which interprets the will must be satisfied that they do so, and no other rule can, in the abstract, be laid down." I am not satisfied from the evidence offered, that either of these parties is entitled as devisee of the property in dispute, when the proof is applied to the language of the will. I consider the devise as inoperative from uncertainty, occasioned by a mistake which we have no power to correct. The prayer, which was refused, having asked the court to affirm the title of the defendant, it was properly refused, as should have been one offered on the hypothesis of the plaintiff's right as devisee. As was said in *Hiscocks vs. Hiscocks*, 5 *Mees. & Wels.*, 363, the plaintiffs must, for the present, succeed, but the claims of the heirs at law may ultimately prevail.