# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 3, 1920.

MERCANTILE TRUST AND DEPOSIT COMPANY, ETC.,
VS.
FLOYD SHIPLEY BEALL.

Venable, Baetjer & Howard for plaintiff.

Mason P. Morfit and Jas. R. Brewer for defendant.

DAWKINS, J.—

The Court—I very much appreciate the very able and full discussion by

counsel in this case. The question is not without difficulty, and yet, to me, the proposition presented in this special case is clear. I have taken occasion since yesterday to examine the papers and also to go over some of the cases cited. As I am very sure I would not reach any different conclusion if I held the case, I will give you my views at the present time without preparing any formal opinion. I will, however, if you desire it, let what I may now say be reduced to writing and filed as a part of the record of the case.

Mr. Howard—I think that would be very satisfactory.

The Court—Of course, the principle involved might seem to be fraught with difficulty, yet I do not see any great difficulty in this case. I feel that much of the evidence offered, if not all of it, should be admitted. Confessedly, if it is admitted, the decision of the question is very much removed from doubt. I believe it is the law—it ought to be the law—where there is any doubt in construing a will or in finding out what a decedent may have intended, that the court should have the benefit of all explanatory facts and circumstances.

I do not mean anything intended to contradict the contents of the will, but anything tending to show what the manifest intention of the testatrix was should be considered.

Now, if that is true as to the evidence, then practically all the evidence should be admitted.

Possibly that part of the conversation regarding the desire to pay back the insurance or make good the insurance to these ladies might not be strictly admissible. Possibly some other portions of the testimony also, tending directly to prove intention, should be stricken out, but the general circumstances, the relationships, the facts gathered from the will itself, and the contexts of the will, are all clearly admissible. The fact of how these people lived, how frequently they visited each other, and everything of that kind, should be admitted so as to let us, so far as possible, sit in the "armchair," as someone has said, as the testatrix sat in it. The interview of Mr. Reese with the testatrix, except possibly some of those items of it above mentioned, seems to me is not

only illuminating, but is conclusive of the situation.

There this old lady was, in one paragraph of the will, naming one niece, Mrs. Britton, and in the next paragraph naming the only other niece—as "niece" but not by exact name—both real nieces—full nieces—in the same language exactly, save in name, giving the same amount to each, recognizing that each was equally entitled to her bounty. We find no mention of either of these beneficiaries in any other part of the will. Mrs. Britton's children do not seem to be mentioned. There is no suggestion from any source, either from what Mr. Reese told us or from the context of the will, that the old lady had in mind her great-nieces or the grandchildren of any one.

I think, with Mr. Morfit, that the location of Mrs. Floyd (Brook) Beall as in Washington, signifies something. The testatrix knew that Mrs. Beall was going there to take this civil service examination. She knew, or she ought to have known, that she had a residence in Washington. She knew that the little girl whose real name was Floyd Brook was domiciled with her aunt in another place outside of Washington.

Dropping down to the paragraph in the will where Mrs. DeVries is mentioned as "Mrs. John DeVries" (Mr. Reese taking the language from her exactly), and the other lady is mentioned as "Mrs. Carrie Herring," when that was not her full correct Christian name, and Mr. Harry DeVries is called "Harry DeVries," showing the rather careless naming by the testatrix of persons—Mrs. Carrie Herring, who, as I understand, is her sister—wasn't she?

Mr. Howard—I think she is a second cousin.

The Court—I understood you to say yesterday she was a cousin. At any rate the inaccuracy of mentioning the Christian names of these people seems to me is an indication, apart from the explanation of the word "Brook" getting in Mrs. Beall's name, that the testatrix was not so severely accurate in mentioning people's real names.

I confess, after the hearing yesterday, I was very much disturbed as to how the word "Brook" got in the will if not so intended, and how Mrs. Floyd Shipley Beall was intended as the lega-

tee instead of Floyd Brook. Beale. I am disposed to believe that Mr. Morfit's explanation this morning is not an unreasonable one, viz., the fact that her husband's (Mr. Beall's) father was named "Brook," and that the testatrix knew her niece had been divorced from her last husband and that she had taken her former husband's name. This seems to me a perfectly reasonable explanation in trying to arrive at what the intention was as to how that name got in the will instead of the one intended.

Now, the coupling of the nieces together, remembering their equal relationship, considering the equal amount of money given to each, are all circumstances which are unquestionably admissible, as they are gathered from the will itself—these ought to be considered as conclusive proof. The fact that one or the other of the nieces is needy or prosperous, there is no evidence that the testatrix took into consideration.

It does seem with all this testimony in, that the matter ought, so far as the law is applicable, to be removed from any great difficulties. I do not think the acceptance of these facts does any violence to the law. I do not think when the description is not accurate (because technically the one is a great-niece, the other is a niece) that there should be any doubt as to the law.

The English case relied on by the plaintiff (Doe vs. Hiscocks, 5 M. & W. 363) was decided not far from a hundred years ago. We surely have advanced some in the construction of wills since then—or should have advanced—since that case. The law as stated by Wigmore in his book on Evidence, Vol. IV, page 3509, Sec. 2474, well states what I think the law is in this country as to admissibility of evidence of intention of people. The case of Willard vs. Darrah, 168 Mo. 660, which I had not read until Mr. Morfit read it this morning, to the same effect, is a well-reasoned case which applies the same principle. It must be proper, when there is no real doubt, of fixing in this way the person for whom the gift is intended. When a person does not accurately answer a description I can see no violence to the law. It seems to me it ought to be the law that if all the circumstances surrounding the making of a will, and especially the talk with the scrivener,

etc.; can show for whom it is really intended, that we ought not to have any difficulty with the law. I think that is the situation regarding the law and the true interpretation of it.

While I do think the designation should generally be considered superior to the name, yet the designation is not entirely accurate here. This, taken with the circumstances so well discussed by counsel, I do not feel that there ought to be any trouble in reaching the right conclusion. My conclusion is that this legacy was meant for Mrs. Beall, the mother, Floyd Shipley Beall, the real niece of the testatrix, and not for Floyd Brook Beall, the grand-niece.

I am aware of the fact that in reaching this conclusion it may deprive the daughter and give the mother something that the daughter, by a strict construction, might receive, but I am also satisfied that while the situation does arise, yet the money was intended for the mother. I feel that all the circumstances and all the facts and all the surrounding conditions indicate that. If this is true, we ought to try to make our law fit the case. I have always understood that the correct theory in construing wills is to brush aside any technical difficulties, if possible, and try to arrive at the real intention of the maker of a will. I am satisfied from the consideration I have given it since yesterday that Miss Shipley's intention was to give each of her nieces the same amount of money and she did not intend to recognize the great-niece.

I want again to express my thanks to you gentlemen because this is a very interesting and a very unusual question. If I adopt the theory of Judge Tuck in the case referred to in 8 Md. 496, Stokeley vs. Gordon, neither niece nor grand-niece would get this legacy I suppose.

Mr. Morfit—Somebody would get it whom she did not intend to have it, and that would be the residuary legatees.

The Court—I would like to have had the benefit of Judge Eccleston's views, as quoted by Judge Mason, in the 8th Maryland case. I think Judge Eccleston must have had the right view of that case even though in the minority. I do not believe in this day and generation if the thing can be so reason-

 

ably explained, that we ought to shut our eyes to such explanation.

I think, after giving the best consideration I have been able to give in the last twenty-four hours, and since the authorities are so meagre and the question has been so seldom discussed, I can not help but reach the conclusion I have indicated, and I am prepared to sign a decree.

I rather regret that the question could not be reviewed by a higher court, because it is such a novel one and is one capable of so much interesting research and investigation. I think it is a very intricate question in a way, even though the facts in this particular case are apparently simple. I want to be understood as adopting the theory of Mr. Wigmore in the matter of admitting the evidence. The intention of the person making a will should never be defeated, if it is possible to avoid doing so.

I am prepared to sign a decree in accordance with the views heretofore expressed.